UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CURTIS K. WILLLIAMS II, | ) | Case No. 5:22-cv-1649 |
| Plaintiff, | ) | |
| v. | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| SUMMIT COUNTY, *et al.*, | ) | |
| Defendants. | ) | **MEMORANDUM OPINION AND ORDER** |

Dr. Curtis K. Williams II, Ph.D. ("Williams" or "Plaintiff") filed suit in this Court against the City of Akron, Summit County, Judge Elinore Marsh Stormer ("Stormer"), and other individuals employed by the Summit County sheriff's office. (Doc. No. 1.) Stormer filed a Motion to Dismiss. (Doc. No. 21.) The other defendants answered the Complaint. (Doc. Nos. 8 & 22.) Stormer's motion has been fully briefed. (*See* Doc. Nos. 25 & 28.) For the reasons stated below, the Motion to Dismiss is DENIED.

**I.  Facts**

The following facts alleged in the Complaint are pertinent to the motion to dismiss.

The Summit County Court of Common Pleas ("CCP") is located at the Summit County Courthouse in Akron, Ohio. (Doc. No. 1 at ¶ 1.) The CCP includes a Probate Division. (*Id.* ¶¶ 15, 21 & 65.) The CCP also has several specialized dockets, including the "HOPE Court" for individuals diagnosed with mental illness and the "Valor Court" for veterans. (*Id.* ¶¶ 17-18.)

Williams is a psychologist and licensed social worker employed by Minority Behavior Health of Akron. (*Id.*) Williams worked at the courthouse as an appointee and advisory board member for the HOPE Court. (*Id.*) He had previously worked at the courthouse as an appointee

for the Valor Court. (*Id.* ¶ 18.)

On Tuesday, September 15, 2021, Williams co-facilitated a group session for HOPE Court parolees at 2:00 p.m. (*Id.* ¶ 19.) Covid-19 protocols were in place at the time. For example, masks were required for admission to the courthouse. (*See id.* ¶¶ 19-20.) Williams and his colleagues decided to hold the group session outside in the adjacent outdoor courtyard to allow for social distancing. (*Id.* ¶ 19.)

For medical reasons described in the Complaint, when the parolee group session ended at 2:50 p.m., Williams had an urgent need to use the restroom. (*Id.*) No longer with colleagues or parolees, he did not walk around the building to use the main entrance of the courthouse. Instead, he approached the glass door of the courtyard entry to the courthouse. (*Id.*)

During the session, Williams observed numerous people going in and out of this entry point. (*Id.* ¶ 20.) The Complaint described the glass door as "within approximately 30 feet and plain sight of the building's main security checkpoint and entryway." (*Id.*) Williams alleged that "this door did not have any signage on it stating that it was a prohibited entrance, and indeed had a sign on it stating, 'Mask Required for Admission to Courthouse Effective 05/05/2020,' suggesting that anyone may enter through that door as long as they are wearing a mask, as Williams was." (*Id.*) Below are photographs showing the courtyard doorway that were included within the body of the Complaint:

  

(Doc. No. 1 at PageID 7 & 21.)

Williams approached this glass door (with the required mask), at which point a woman in plain clothes who he did not know (also masked) verbally directed him not to enter and physically tried to prevent him from walking through the door. (*Id.* ¶¶ 20-21.) It is alleged that she stood in Williams' path, held onto the door that Williams attempted to open, and put her hand on Williams' chest. (*Id.* ¶¶ 21-22; *see also id.* at PageID 12-14.) That person turned out to be Stormer, who was a Judge in the CCP's Probate Division. (*Id.* ¶¶ 1-2, 15, 21, 65 & 73.)

The Complaint included excerpts from a police statement that Stormer apparently handwrote and signed the next day:

> stepped out he moved in front of me to come in. I put my hands up + said you can't come in this way. He said he could. I asked if he was a police officer. He just said he could come in this way. As he continued forward I pressed my hands to his chest + repeated "Sir you can't come in this way." He said "You're pushing me" + I said "Yes, you can't come in this door."
>
> \* \* \*
>
> He continued forward + I could not stop him. I stepped back into the courthouse + called for the deputies saying "I'm trying to leave + this man has forced his way in." The deputies responded + then I left through the door

209 S High St Akron

Signature of Witness: X Elaine Marsh Stormer
Officer's Signature: X J BEAM #28

(*Id.* at PageID 9.)

The Complaint described Stormer's statement as follows:

> In her written statement executed the day after the incident, Judge Stormer confirms that when she first opened the door to confront Dr. Williams, he "stepped back and waited" for her to walk through. Then, as the judge describes,

> Williams "moved in front of me to come in." At this point, the judge admitted that, "[a]s [Williams] continued forward I pressed my hands to his chest . . . he said, 'you're pushing me' and I said 'yes, you can't come in this door.'" Then, as the judge's statement concludes,
>
> "[Williams] continued forward and I could not stop him. I stepped back into the building and called for the deputies saying, 'I'm trying to leave and this man has forced his way in.' The deputies responded and then I left through the door."

(*Id.* ¶ 29.)[1] The Complaint further alleged that—

> the Judge falsely accused Williams of assaulting her and misrepresented him as a violent threat, screaming at the top of her lungs to knowingly and maliciously set the courthouse police on him, and then, incredibly, walking away from the scene and out of the building while four officers – Defendant James Beam, Defendant Thomas Fickes, John Toth, and James Wilson, all Summit County Deputy Sheriffs – proceeded to needlessly and excessively beat, tackle, tase, pin, handcuff, and humiliate Williams on the lobby floor, as passersby, including Judge Breaux herself, looked on in bewilderment.

(*Id.* ¶ 23.)[2]

Plaintiff brought the following Section 1983 claims against Stormer: an unreasonable seizure in violation of the Fourth Amendment (Count 1); excessive force in violation of the Fourth Amendment (Count 2); violation of the right of access to the courts and retaliatory prosecution in violation of the First Amendment (Count 3); malicious prosecution in violation of the Fourth Amendment (Count 4); and fabrication and falsification of evidence in violation of the due process clauses of the Fifth and Fourteenth Amendments (Count 5). Count 7 charged Stormer with malicious prosecution under Ohio law.

---

[1] The Complaint also alleged details regarding Williams' apprehension, arrest, and detention; criminal charges brought against him plea negotiations; the dismissal of criminal charges against Williams; and security video footage that allegedly was lost or destroyed. (Doc. No. 1 at ¶¶ 24-61.)

[2] Williams was informed that he would be "charged in the Akron Municipal Court with assaulting Judge Stormer in violation of R.C. 2903.13, as well as the crimes of trespass under R.C. 2911.21, and disorderly conduct under R.C. 2917.11." (*Id.* ¶ 26.)

## II. Law and Analysis

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Stormer moved to dismiss on two grounds. First, Stormer argued that she did not act under color of state law and therefore may not be held liable under Section 1983. (Doc. No. 21 at PageID 129-39.) Second, she argued that the Complaint did not make out the elements for a malicious prosecution claim under state law. (*Id.* at PageID 139-43.)

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). The function of the Court in ruling on such a motion is not to weigh the evidence, nor to appraise the credibility of witnesses. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

"To survive a motion to dismiss, the pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

A court must accept factual allegations as true and draw all reasonable inferences in a plaintiff's favor. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020); *see also Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (a court "need not accept as true legal conclusions or unwarranted factual inferences"). "The plausibility of an inference depends on a host of considerations, including common sense . . . .'" *Ryan*, 979 F.3d at 524 (quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).

If a plaintiff pleads facts that prove a flaw in the claim or substantiate a defense, he may plead himself out of federal court. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

### B.  State Action

Determining whether a defendant is a state actor is a "necessarily fact-bound inquiry." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 298 (2001) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982)); *see also Doe v. Oberlin Coll.*, 60 F.4th 345, 353 (6th Cir. 2023). "[W]hile the existence of state action may be fact-intensive, it is a question of law." *Lindke v. Freed,* 37 F.4th 1199, 1202 (6th Cir. 2022), *cert. granted*, No. 22-611, 2023 WL 3046121 (U.S. Apr. 24, 2023); *see also Neuens v. City of Columbus,* 303 F.3d 667, 670 (6th Cir. 2002) ("Whether [defendant] was acting under color of law is a legal issue."). "[U]nder 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States*, 325 U.S. 91, 111 (1945).

To determine whether a public official was acting in her state capacity, the Sixth Circuit applies the "state-official test." *Lindke,* 37 F.4th at 1202. "This test asks whether the official is performing an actual or apparent duty of his office, or if he could not have behaved as he did without the authority of his office." *Id.* at 1203 (quotations omitted). The Sixth Circuit described this as a version of the Supreme Court's nexus test, which considers whether the defendant's conduct was "entwined with governmental policies." *Id.* (citing *Brentwood*, 531 U.S. at 296). "[A] challenged activity may be state action when it results from the State's exercise of coercive power, . . . when a private actor operates as a willful participant in joint activity with the State or its agents, . . . when it has been delegated a public function by the State, . . . [or] when it is entwined with governmental policies . . . ." *Brentwood*, 531 U.S. at 296 (quotations and citations omitted).

As an initial matter, the Complaint expressly alleged that Stormer acted under color of state law:

> 64. With purpose and intent, acting under color of law, Defendants Stormer, Beam, and Fickes caused the unlawful arrested, detainment, and seizure of Dr. William's person. Reasonable officers in the respective positions of these Defendants would not have initiated this seizure. These Defendants seized Williams without probable cause or reasonable need to do so. The unlawful seizure was objectively unreasonable under the Fourth Amendment.
>
> 65. By her actions asserted herein that initiated the unlawful seizure, Judge Stormer was acting under color of law in her administrative capacity as the Summit County Probate Judge. This capacity includes Judge Stormer's duty and authority to "employ and supervise all clerks, deputies, magistrates, and other employees of the probate division" pursuant to O.R.C. § 2101.01(A), including the courthouse deputies whose actions are discussed herein, as well has her responsibilities under the Ohio Rules of Superintendence, including Rule 4.01 which charges her with "responsibility" and "control" over the "administration" of the Court, Rule 9, which charges the court to "develop and implement a court security plan," and Summit County Probate Court Local Rule 9.1, pursuant to which Judge Stormer's court "has adopted and implemented a local Security Policy and Procedures Plan." Had Judge Stormer not been "clothed with the authority of" these and other state law provisions, including the basic matter of her status as a presiding judge in the courthouse where these events took place,

>Williams would not have been unlawfully arrested, detained, and seized as alleged herein. Rather, a brief and peaceful conversation would have ensued that would have precluded this entire series of events.
>
>\* \* \*
>
>73. By her actions asserted herein that initiated the unlawful seizure, Judge Stormer was acting under color of law in her administrative capacity as the Summit County Probate Judge as alleged in Count 1 above, and intentionally caused Officers Beam and Fickes to employ excessive force against Dr. Williams with her misrepresentations and actions against him as alleged herein, including her actions in cavalierly vacating the premises as the officers began to unnecessarily tackle and beat Williams. Had Judge Stormer not been "clothed with the authority of" the above cited and other state law provisions, including the basic matter of her status as a presiding judge in the courthouse where these events took place, Williams would not have been subject to excessive force as alleged herein. Rather, a brief and peaceful conversation would have ensued that would have precluded this entire series of events.

(Doc. No. 1 at PageID 26-28.)

Stormer's motion would have the Court presume these allegations to be untrue or inaccurate, but that is not proper in the Rule 12(b)(6) context. *See Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010) (holding that plaintiff's allegations of state action sufficed to withstand a motion to dismiss); *cf. Warner v. Amazon.com Servs., LLC*, No. 1:21-CV-1885, 2022 WL 2342658, at \*5-6 (N.D. Ohio June 29, 2022) (dismissing Section 1983 claims where plaintiff failed to allege state action). The Complaint sufficiently alleged that Stormer acted under color of state law.

Stormer also argued that she did nothing more than act like a private citizen who reported a violation or crime to law enforcement officers. (Doc. No. 21 at PageID 131-35.) But that narrative is contrary to what is alleged in the Complaint. (*See, e.g.,* Doc. No. 1 at ¶¶ 21-23.) Stormer did not merely report a rule violation. She physically endeavored to enforce a policy which she apparently believed prohibited Williams' entry through the courtyard door. (*Id.*) Stormer first pointed Williams away. (*Id.* at PageID 13 n.2.) Stormer then spoke to Williams

directly, as she recounted in her statement to officers: "I put my hands up & said you can't come in this way. . . . I pressed my hands to his chest & repeated 'Sir you can't come in this way.' . . . I stepped back into the courthouse & called for the deputies saying 'I'm trying to leave & this man has forced his way in.'" (*Id*. at PageID 9.)

This conduct – enforcing a policy for entry to a courthouse – is quintessential state action. *See generally Fareed v. G4S Secure Sols. (USA) Inc.,* 942 F. Supp. 2d 738, 742 (E.D. Mich. 2013); *Al-Qadir v. G4S Secure Solutions (USA) Inc.*, No. 11-0357, 2013 WL 64779, at *3-4 (M.D. Tenn. Jan. 3, 2013). It is conduct performed regularly by state-employed security personnel (or occasionally by private security guards retained to perform this governmental function). "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer acted under color of state law." *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975) (quotation omitted). That Stormer did not identify herself as a judge or act in a typical judicial role is of no moment. "The law does not require that the Defendant be acting on behalf of the state under the state's authority. Indeed most constitutional violations occur when officials abuse, overreach, or act outside their official authority." *Miller v. City of Shaker Heights, Ohio*, 438 F. Supp. 3d 829, 839 (N.D. Ohio 2020). Because Stormer allegedly performed a function that was classic state action, she is amenable to a claim under Section 1983 – even assuming *arguendo* that she exceeded her designated role as a judge.

Stormer also argued that her judicial role did not give her statutory supervisory power over security guards. (Doc. No. 21 at PageID 130.) That may well be correct. But Stormer goes further to assert that "there is no allegation that [she] ordered Dr. Williams' seizure or arrest via her contempt powers or other official authority. Nor did she employ or control the deputies who

allegedly seized Williams." (*Id.* at PageID 135.) Williams countered that a "statutory structure hardly forecloses the possibility (and, indeed, the practical reality) that judges have presumptive power and influence over how police officers perform their duties in a courthouse . . . " (Doc. No. 25 at PageID 163.) Williams alleged that Stormer exercised such power, and that allegation precludes dismissal. (*E.g.,* Doc. No. 1 at ¶¶ 65 & 73.)

> [S]tate employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a § 1983 suit acts under color of state law when [s]he abuses the position given to [her] by the State. Thus, generally, a public employee acts under color of state law while acting in [her] official capacity or while exercising [her] responsibilities pursuant to state law.

*West v. Atkins*, 487 U.S. 42, 49-50 (1988) (quotations and citations omitted).

Stormer next argued that she merely made a report of an unauthorized entry and did not order Williams to be seized. (Doc. No. 21 at PageID 130-35.) But that is at odds with the Complaint allegations. Williams alleged that Stormer was "falsely accusing him of assaulting her, misrepresenting him as an urgent and violent threat to building security, and having him beaten, tackled, tased, handcuffed and arrested by courthouse police." (Doc. No. 1 at ¶ 2.) Also alleged was that "the Judge scream[ed] at the top of her lungs to knowingly and maliciously set the courthouse police on him . . . ." (*Id.* ¶ 23.) Factual allegations in a complaint must be taken as true. *See generally Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (holding that "plaintiffs have alleged enough facts to plausibly state that [defendants] are state actors").

Finally, Stormer argued that the Complaint relied on her "mere status as a judge." (*See* Doc. No. 28 at PageID 177.) That is not so. The allegations described a state employee who purportedly enforced a government policy to prevent access to a government-owned building and then directed other government-employed personnel to apprehend someone deemed to be in violation of that policy. To the extent the Complaint alleged that Stormer could not have acted in

the same manner without the authority of her office, that itself would show state action under controlling precedent. *See West*, 487 U.S. at 49-50; *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001).

The allegations here sufficed to show state action and withstand a motion to dismiss.

### C. Malicious Prosecution Under Ohio Law

Stormer argued that the Complaint failed to plead a viable claim for malicious prosecution under Ohio law because there was probable cause to charge Williams with assault, trespass, and disorderly conduct. (Doc. No. 21 at PageID 139-42.) On reply she argued that it "is undisputed that after alerting the Sheriff's deputies, Judge Stormer left the building and had no further involvement in Dr. Williams' seizure or arrest." (Doc. No. 28 at PageID 185.)

The motion is again at odds with facts alleged in the Complaint. The Complaint alleged that there was no probable cause. (Doc. No. 1 at ¶ 107.) Williams pled false or misleading statements made by Stormer not only before his arrest but also afterward. (*Id*. at PageID 8-13.) The Complaint alleged that Williams was prosecuted based on the false accusation that he physically assaulted Stormer. (*Id.* ¶¶ 37-38.) Williams also pled that six months later Stormer continued to play a role in decisions regarding his prosecution. (*Id.* ¶¶ 53-54.)

Accordingly, the Complaint plausibly stated a claim for malicious prosecution. *See generally Sykes v. Anderson*, 625 F.3d 294, 314 (6th Cir. 2010).

### III. Conclusion

For the reasons stated herein, Defendant Elinore Marsh Stormer's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Date:  May 9, 2023

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE